


August 19, 2024

Secretary Wes Allen
Alabama Secretary of State
P.O. Box 5616
Montgomery, AL 36103-5616

Cc:    Alabama County Boards of Registrars
       Alabama Attorney General Steve Marshall

**Re:   Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents**

*VIA E-MAIL AND U.S.P.S.*

Dear Secretary Allen:

The undersigned write pursuant to 52 U.S.C. § 20510(b)(2) to inform you that Alabama's voter purge program targeting individuals on the voter rolls previously issued noncitizen identification numbers, which you announced on August 13, 2024,[1] violates the National Voter Registration Act ("NVRA").

On August 13, you announced that you had "identified 3,251 individuals who are registered to vote in Alabama who have been issued noncitizen identification numbers by the Department of Homeland Security."[2] In your announcement, you

---

[1] Ala. Sec'y of State, Press Release, *Secretary of State Wes Allen Implements Process to Remove Noncitizens Registered to Vote in Alabama* (Aug. 15, 2024), https://perma.cc/QE26-6LGD.

[2] Ala. Sec'y of State, Press Release, *supra*.

1

recognized the "possib[ility]" that "some of the individuals who were issued noncitizen identification numbers have, since receiving them, become naturalized citizens and are, therefore, eligible to vote."[3] Nevertheless, you stated that you are "instructing the Boards of Registrars in all 67 counties to immediately inactivate and . . . remove" purported noncitizens and to take steps in a "process" to require additional action from those registered voters in order to appear on the voter rolls and vote.[4] According to your announcement, those voters must "update their information on a State of Alabama Voter Registration Form" and undergo a "verifi[cation]" process.[5] You also stated that you had provided this list of 3,251 registered voters to the Office of the Alabama Attorney General "for further investigation and possible criminal prosecution."[6]

The issuance of this announcement and these instructions to County Boards of Registrars implements an untimely systematic voter list maintenance program targeting naturalized citizens in violation of federal law, including the NVRA. As detailed below, we demand that your office and all other implementing state and local entities in Alabama immediately cease this program, and we further demand that Alabama produce documents related to the program pursuant to the NVRA.

    **I.     Alabama's Newly Announced Purge Program Violates the NVRA.**

          **a.  Alabama Cannot Systematically Remove Voters from the Rolls Within 90 Days of an Election.**

Section 8(c)(2)(A) of the NVRA (the "90-Day Provision") requires that states complete "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" "not later than 90 days prior to the date of a . . . general election for Federal office." 52 U.S.C. § 20507(c)(2)(A). Alabama may not take any steps to implement any program to systematically remove voters within this 90-day "quiet period." You announced your purge program on August 13, 2024—only 84 days before in-person voting on November 5, even fewer before the start of absentee voting, and undoubtedly within the "quiet period."

Naturalized citizenship, whether an individual has been issued an identification number as a noncitizen, and perceived citizenship status are not among the enumerated exceptions by which a state may use a systematic program to remove a voter from the rolls during the quiet period. *See* 52 U.S.C. § 20507(c)(2)(B); *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1345 (11th Cir. 2014) ("Congress expressly allowed for a number of exceptions to the 90 Day Provision, and an exception for removals of non-citizens is not one of them."). Indeed, the Eleventh Circuit ruled that

---

[3] Ala. Sec'y of State, Press Release, *supra*.
[4] Ala. Sec'y of State, Press Release, *supra*.
[5] Ala. Sec'y of State, Press Release, *supra*.
[6] Ala. Sec'y of State, Press Release, *supra*.

a nearly identical effort by Florida to remove purported noncitizens from its voter rolls during the quiet period violated the NVRA. *See Arcia*, 772 F.3d at 1348. That case, *Arcia*, is controlling law within the Eleventh Circuit—including in Alabama. In *Arcia*, Florida had initiated programs to systematically identify and remove purported noncitizens from the voter rolls. *Id.* at 1339. These programs were systematic because they "did not rely upon individualized information or investigation to determine which names from the voter registry to remove." *Id.* at 1344; *see also N.C. State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, No. 1:16-CV-1274, 2018 WL 3748172, at *9 (M.D.N.C. Aug. 7, 2018) (where cancellation of "374 voters' registrations" based on a single source of information "lacked the individualized inquiry necessary to survive the NVRA's prohibition on systematic removals within 90 days of a federal general election."). Consequently, these programs violated the clear statutory language of 52 U.S.C. § 20507(c)(2)(A) that bars a state from using "any program" to "systematically remove the names of ineligible voters."

The Eleventh Circuit reinforced in *Arcia* that the 90-day provision "strikes a careful balance" between state interests of ensuring that eligible citizens can vote while maintaining accurate and current rolls precisely because this provision "permits systematic removal programs at any time *except* for the 90 days before an election because that is when the risk of disfranchising eligible voters is the greatest." 772 F.3d at 1346 (emphasis original).

Your press release shows that your office is implementing the same kind of systematic purge program that, as the Eleventh Circuit held in *Arcia*, violates the NVRA. You acknowledge that you have identified the list of thousands of individuals based on the criterion that they have, allegedly, previously been issued identification numbers for noncitizens by the federal government. Your press release further makes clear that this effort is part of a systemic, periodic sweep of certain records: "This is not a one-time review of our voter file. We will continue to conduct such reviews . . . ."[7] You further acknowledge that your list likely sweeps in naturalized citizens. As such, you have not undertaken any "individual correspondence or rigorous individualized inquiry" necessary to permit an *individual* removal during the 90-Day period. *See Arcia*, 772 F.3d at 1346.

Lastly, the *Arcia* court rejected the state's argument that it could remove purported noncitizens within the 90-day quiet period because they are "not technically 'registrants,' and removing them from the voter rolls is not really a 'removal.'" *Id.* at 1347. Any such interpretation based on categorial distinctions would "eviscerate the meaning of the phrase 'any program' in the 90 Day Provision." *Id.* at 1348; *see also* Order at 15-18, *Mi Familia Vota v. Fontes*, No. 2:22-cv-00509 (D. Ariz. Sept. 14, 2023), ECF No. 534 (rejecting same argument and holding that the 90-Day Provision applies to removals of purported noncitizens). Any program by your office

---

[7] Ala. Sec'y of State, Press Release, *supra*.

3

to identify and systematically remove voters from Alabama's voter rolls within the 90-day quiet period is a clear violation of the NVRA—including this one.

### b. Alabama's List Maintenance Procedures Must Be Uniform and Nondiscriminatory and Must Ensure That Any Eligible Applicant Remains Registered to Vote.

Alabama's newly announced voter purge program also violates NVRA Section 8(b)'s requirement that list maintenance programs be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). Federal courts have looked unfavorably on similar programs to Alabama's newly announced purge, which target and disproportionately burden naturalized citizens.

For example, in *United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012), a district court explained that a similar program likely violated Section 8(b). *Id.* at 1350. There, Florida's Secretary of State compiled a list that included all registered voters who had disclosed that they were noncitizens at the time they applied for a driver's license, had subsequently naturalized and registered to vote, and had not updated their citizenship status with the state agency responsible for driver's licenses. *Id.* at 1347-48. The Florida Secretary of State ultimately abandoned this program—perhaps recognizing its fundamental unlawfulness—before the court issued a ruling. *Id.* at 1351. Nevertheless, the court explained that the program had likely violated Section 8(b) because its approach to identifying suspected noncitizens swept in a large number of naturalized citizens. *Id.* at 1350. As the court explained, this "methodology made it likely that the properly registered citizens who would be required to respond and provide documentation [of their citizenship] would be primarily newly naturalized citizens." *Id.* Accordingly, the "burdensome" program "was likely to have a discriminatory impact" on this group of eligible voters in violation of Section 8(b).[8]

Employing similar logic, *Mi Familia Vota v. Fontes*, No. 2:22-cv-00509, 2024 WL 862406 (D. Ariz. Feb. 29, 2024), *appeal pending*, No. 24-3188 (9th Cir.), recently held that a state statutory provision that "requires county recorders to search" a federal database "only for naturalized voters who county recorders suspect are not

---

[8] The district court's framing of its analysis as "probably" in violation of Section 8(b) was consistent with the procedural posture of this case, at the preliminary injunction stage, as well as the mootness of the issue due to voluntary cessation by the Florida Secretary of State. *See Florida*, 870 F. Supp. 2d at 1347, 1351. The *Florida* district court rejected a challenge to Florida's program under the 90-Day Provision, on the basis that removing purported noncitizens is not the kind of removal contemplated by the 90-Day Provision. *Id.* at 1349-50. The Eleventh Circuit implicitly overruled this holding two years later in *Arcia*, which held that systematic removals targeting purported noncitizens are barred by the 90-Day Provision. 772 F.3d at 1346-48; *see also id.* at 1348-49 (Suhrheinrich, J., dissenting) (basing dissent in part on the reasoning of the district court in *Florida* regarding the 90-Day Provision).

4

U.S. citizens" was unlawful because it "subject[ed] *only* naturalized citizens to database checks." *Id.* at *38 (emphasis in original). As the court explained, using the database means that only "[n]aturalized citizens will always be at risk" of removal from this process, in violation of the requirement that state officials refrain from applying different practices in determining who is qualified to vote. *Id.*; *see also* 52 U.S.C. § 10101(a)(2)(A).

Thus, "[a] state cannot properly impose burdensome demands in a discriminatory manner" regarding voter registration, *Florida*, 870 F. Supp. 2d at 1350, including by imposing those demands disproportionately on naturalized voters. The same is true here. In fact, Alabama's program goes further than Florida's by directing the Boards of Registrars in all 67 counties to "immediately inactivate and initiate steps necessary to remove all individuals who [according to the program's flawed methodology] are not United States Citizens."[9] In effect, Alabama's voter removal and re-registration subjects naturalized citizens to a test—and an extra eligibility criterion—before successfully registering to vote. In addition to swearing under penalty of perjury that they are a U.S. citizen who is eligible to vote, the registrant must provide additional information and undergo an additional verification process if Alabama believes they have ever had a noncitizen identification number. Additionally, the press release admits that you are aware that at least some of the individuals who were issued noncitizen identification numbers in the past may have become naturalized citizens whose voter registration will be deactivated and removed. A program that affects only naturalized citizens and knowingly places burdens exclusively on those citizens (and does so based on flawed data) is discriminatory and violates Section 8(b) regardless of whether there is a cure program.

This program likewise violates the NVRA's requirement that the State "ensure that any eligible applicant is registered to vote in an election." 52 U.S.C. § 20507(a)(1). Alabama may not rely upon evidence it has conceded is stale and flimsy to remove voters whom federal law requires the State to "ensure" remain registered to vote.

    **c. Alabama's Removal and Re-Registration System Violates the NVRA's Requirements Regarding "Necessary" Registration Information.**

Alabama's removal and re-registration system for voters who are naturalized citizens also violates the NVRA's limitation on proof of citizenship to an attestation under penalty of perjury that the registrant is a U.S. citizen. 52 U.S.C. §§ 20508(b)(2)(A)-(B), 20505(a)(1)-(2). The NVRA provides that a state voter registration form "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other

---

[9] Ala. Sec'y of State, Press Release, *supra*.

parts of the election process" *Id.* §§ 20508(b)(1), 20505(a)(1)-(2). Under the NVRA, a state voter registration form "shall include a statement that (A) specifies each eligibility requirement (including citizenship); (B) contains an attestation that the applicant meets each such requirement; and (C) requires the signature of the applicant, under penalty of perjury." *Id.* §§ 20508(b)(2), 20505(a)(1)-(2); *see also id.* § 20504(c) (imposing similar requirements on voter registration forms included as part of a driver's license application).

Further, Alabama must also "accept" and "use" the voter registration form provided by the U.S. Election Assistance Commission, *id.* § 20505(a)(1), which does not require documentary proof of citizenship. *Id.*; *see also League of Women Voters of United States v. Harrington*, 560 F. Supp. 3d 177, 180, 185-86 (D.D.C. 2021) (vacating federal Election Assistance Commission approval of Alabama's request to include a documentary proof of citizenship requirement on its state-specific instructions for the federal voter registration form, because the Commission did not assess whether such changes were necessary for Alabama to assess voter eligibility and so failed to comply with the Administrative Procedure Act in its administration of the NVRA's requirement).

By requiring more than an attestation of citizenship for voters in federal elections, Alabama undermines the NVRA's command that only the minimum amount of information necessary to determine eligibility be required to register to vote for federal officials. *See Fish v. Kobach*, 309 F. Supp. 3d 1048, 1106 (D. Kan. 2018) (striking down Kansas law requiring registrants to present additional citizenship paperwork to successfully register to vote, on both NVRA and equal protection grounds). Alabama's removal process would require "naturalized citizens [and only naturalized citizens] to update their information on a State of Alabama Voter Registration Form" and only permits them to vote *after* they complete this additional step and authorities complete "verifi[cation]."[10] This kind of documentary proof of citizenship requirement presents a "substantial risk that citizens will be disenfranchised." *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (holding that permitting Alabama to enforce this type of requirement for voting posed such a risk).

Not only would Alabama's new voter purge program purge many of the likely thousands of Alabama voters who are naturalized citizens, but this heightened requirement violates the NVRA's minimal requirements provision and otherwise does not comply with the NVRA's attestation provision for voter registration.

## II. Demand for End to Unlawful Action and for Documents

For these reasons, we make the following demands on your office and any other state or local governmental entities acting to implement the list maintenance

---

[10] Ala. Sec'y of State, Press Release, *supra.*

6

program announced on August 13, 2024, to "immediately inactivate and . . . remove" individuals from Alabama's voter rolls and have those individuals undergo a "process" of "verifi[cation]" as described in the August 13 press release (the "Program"):

1. Immediately cease the Program;

2. Issue a public statement that no person shall be removed from Alabama's voter rolls pursuant to the Program and that no person shall be removed from Alabama's voter rolls based on the fact of having previously been issued an identification number as a noncitizen by the Department of Homeland Security; and

3. Provide notice to any and all individuals contacted or noticed pursuant to the Program that they remain registered to vote in Alabama elections, including the November 2024 election, and that no further action on their part is needed.

Further, the NVRA requires that Alabama, upon request, produce "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). We therefore request that the following documents be produced promptly:

1. Individualized voter information[11] for each of the following voters and voter registration applicants:

    a) All 3,251 registered voters your office identified as potential noncitizens;

    b) All voters canceled, purged, or otherwise removed from the list of eligible voters pursuant to the Program; and

    c) All voter registration applicants denied registration pursuant to the Program;

2. Any and all lists from other agencies used for comparison to create the list of 3,251 registered voters your office identified as potential noncitizens;

3. Any and all specific instructions provided to County Boards of Registrars regarding implementation of the Program;

---

[11] "Individualized voter information" as used in this request includes: first name; last name; middle name; suffix; address, including street number, apartment number, city, state, zip code, and county; mailing address, if different; phone number; precinct number; voter ID number assigned by an election official; date of birth; place of birth; date of voter registration; race; gender; reason purged from voter roll or denied registration; and date purged from voter roll or denied registration.

7

4. Any and all communications with the Alabama Attorney General regarding the 3,251 registered voters your office identified as potential noncitizens;

5. All documents relating to any notice provided to the 3,251 registered voters your office identified as potential noncitizens;

6. All documents supporting your contention that the registered voters or voters referred to in the August 13, 2024 press release were potentially noncitizens, including the source(s) of information for determining these registered voters purportedly possess noncitizen identification numbers;

7. All documents regarding the development, implementation, or announcement of the Program,[12] including drafts of such documents;

8. All documents regarding the "process" initiated by the Secretary of State's office to allow naturalized citizens to update their information;

9. All documents regarding any steps taken by the Secretary of State's office to determine prior to your announcement whether any of the 3,251 registered voters identified by your office as potential noncitizens are, in fact, naturalized citizens;

10. All advisory or guidance documents, whether formal or informal, provided to county Boards of Registrars, Probate Judges, and/or other county election administrators regarding the implementation of this "strategic effort[]," including those provided after the release of the press release;

11. All documents relating to the removal of any of the 3,251 registered voters identified as potential noncitizens from the rolls to date;

12. All documents relating to the removal of any registered voter (whether or not among the 3,251 identified by your office) pursuant to the Program;

13. All communications regarding the development, implementation, or announcement of the Program, including but not limited to:

    a) internal communications of the Secretary of State's office;

    b) communications between the Secretary of State's office and other State agencies, including but not limited to the office of the Governor, the office of the Attorney General, and the Alabama Department of Public Safety;

    c) communications between the Secretary of State's office and any legislative branch officials or employees;

---

[12] Ala. Sec'y of State, Press Release, *supra*.

d) communications between the Secretary of State's office and any federal officeholder or agency;

e) communications between the Secretary of State's office and any county officials, including but not limited to Boards of Registrars, Probate Judges, and other county election administrators;

f) communications between the Secretary of State's office and any outside organizations, consultants, experts, or advisers;

g) communications between the Secretary of State's office and the media;

h) communications between the Secretary of State's office and members of the public; and

i) any other communications related to this announcement.

We expect that any charge for these records will be a "reasonable cost," as required under the NVRA's Public Disclosure Provision. 52 U.S.C. § 20507(i)(1). Please inform us of the expected cost prior to delivery if it exceeds $100.

We would prefer to receive all records in electronic format via email (khuddleston@campaignlegalcenter.org and lhattix@aclualabama.org) or other electronic method, if possible. If this is not possible, we are happy to confer about other ways in which we can meaningfully access these records. If any responsive documents or communications are in your possession or the possession of any employees of the Secretary of State on non-governmental computers, on electronic devices, or in paper copy, please include such documents and communications in your production.

* * *

The program you announced on August 13, 2024, plainly violates the NVRA. Alabama's untimely systematic voter purge targeting naturalized citizens is directly analogous to that expressly rejected by the Eleventh Circuit. Under 52 U.S.C. § 20510(b), you must remedy your violation of the NVRA within 20 days, or the undersigned may seek declaratory or injunctive relief. You are on notice that your actions violate the NVRA.

//

Sincerely,

/s/ Danielle M. Lang
Danielle Lang, Senior Director, Voting Rights
Kate Huddleston, Senior Legal Counsel
Valencia Richardson, Legal Counsel
Shilpa Jindia, Legal Fellow
Campaign Legal Center
1411 K Street NW, Suite 1400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegal.org
khuddleston@campaignlegal.org

JaTaune Bosby Gilchrist, Executive Director
ACLU of Alabama
P.O. Box 6179
Montgomery, AL 36106

Allison Hamilton, Interim Executive Director
Alabama Coalition for Immigrant Justice

Anneshia Hardy, Executive Director
Alabama Values Progress

Davin Rosborough, Deputy Director, Voting Rights Project
American Civil Liberties Union
125 Broad Street
New York, NY 10004
drosborough@aclu.org

Michelle Kanter Cohen, Policy Director & Senior Counsel
Nina G. Beck, Counsel
Fair Elections Center
1825 K St. NW, Ste. 701
Washington, D.C. 20006
(202) 331-0114
mkantercohen@fairelectionscenter.org
nbeck@fairelectionscenter.org

Kathy Jones, President
League of Women Voters of Alabama

Amir Badat, Voting Special Counsel
Uruj Sheikh, Equal Justice Works Fellow
Legal Defense Fund
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
abadat@naacpldf.org
usheikh@naacpldf.org

Benard Simelton, President
NAACP Alabama

Bradley Heard, Deputy Legal Director, Voting Rights
Sabrina Khan, Senior Supervising Attorney
Jess Unger, Senior Staff Attorney
Southern Poverty Law Center
1101 17th Street NW, Suite 550
Washington, DC 20036
bradley.heard@splcenter.org
sabrina.khan@splcenter.org
jess.unger@splcenter.org

Angela Curry, Executive Director
United Women of Color