IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALABAMA COALITION FOR IMMIGRANT JUSTICE; LEAGUE OF WOMEN VOTERS OF ALABAMA; LEAGUE OF WOMEN VOTERS OF ALABAMA EDUCATION FUND; ALABAMA STATE CONFERENCE OF THE NAACP; ROALD HAZELHOFF; JAMES STROOP; CARMEL MICHELLE COE; and EMILY JORTNER,<br><br>*Plaintiffs*,<br><br>v.<br><br>WES ALLEN, in his official capacity as Alabama Secretary of State; STEVE MARSHALL, in his official capacity as Alabama Attorney General; and JAN BENNETT, BARRY STEPHENSON, CINDY WILLIS THRASH, and SHEILA COX BARBUCK, in their official capacities as Chairs of Boards of Registrars of Elmore, Jefferson, Lee, and Marshall Counties;<br><br>*Defendants*. | Case No. 2:24-cv-01254-AMM<br>Judge Anna M. Manasco<br><br>**Opposed Motion** |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF EMERGENCY MOTION
FOR EXPEDITED DISCOVERY**

Plaintiffs have shown good cause for expedited discovery to obtain information central to their preliminary injunction motion, which is essential to preserving Plaintiffs' and other Alabamians' ability to vote in an election that is just over five weeks away.

Defendants purport not to know why Plaintiffs need discovery "*now*," and how the information sought could inform this Court's decision on the preliminary injunction motion. ECF 43 at 8. But the answer could not be more evident: the information is needed now because a motion for preliminary injunction is pending, the election is weeks away, and a loss of the right to vote in that election can never be recovered. The information sought is vital for this Court's preliminary injunction analysis, particularly in light of the secretive nature of Defendants' Purge Program. For example, the Court and Plaintiffs need to know: which of Defendants' contradictory descriptions of the Purge Program is accurate; who is on the Purge List; who has already been completely removed from the rolls or re-registered; and how Defendants plan to expand the Program.

Defendants ask the Court to rely on only the documents *they decide* to attach as exhibits to their forthcoming response brief. *See* ECF 43 at 10. But the idea that Plaintiffs must defend against Defendants' cherrypicked evidence about the secretive Purge Program at the preliminary injunction stage is absurd. Nor should Plaintiffs be forced to simply accept Defendants' unsupported assertions that no one will be

removed from the rolls and that voters can easily regain the ability to vote in November. *See* ECF 43 at 3. Those claims conflict with the letters Plaintiffs have received, the experience of at least one Declarant when attempting to re-register, and Secretary Allen's own press release. The way to discern the truth is simple: discovery. And discovery is all the more appropriate because Defendants admit that many relevant documents are "readily available" and were already produced to others and have in fact agreed to provide them to Plaintiffs for an exorbitant cost. ECF 43 at 2, 8.

I. **Plaintiffs' Request for Expedited Discovery Is Reasonable and Supported by Good Cause.**

   A. **Plaintiffs' pending motion for preliminary injunction weighs strongly in favor of expedited discovery.**

Plaintiffs have met the "good cause" standard for expedited discovery. ECF 5 at 7. Defendants maintain that they are "left to guess" how the information Plaintiffs seek could help this Court resolve their preliminary injunction motion. ECF 43 at 8. But the usefulness of the information sought should be plainly apparent to Defendants, especially given that they regularly litigate challenges to voting laws, where they often sit for depositions or provide voter files in the course of discovery. Moreover, Defendants seek to hold Plaintiffs to a higher standard than necessary: it is commonplace for plaintiffs to seek expedited discovery by providing a general explanation that a preliminary injunction motion is pending, and they are not

2

required to provide defendants with a detailed roadmap about how they will use the information in their case. *See, e.g., Doe v. Samford Univ.*, No. 2:21-cv-00871, ECF 3 at 2-3 (N.D. Ala. 2021).

Nonetheless, there are plainly many ways in which the information sought will be relevant to this Court's preliminary injunction analysis. For example:

- Defendants have provided conflicting descriptions of how the Program operates, including in Secretary Allen's press release, the Purge Letters, the NVRA response letter, and this litigation. Those descriptions are also inconsistent with evidence from voters on the Purge List. *See* ECF 23-29 at ¶¶ 12-13. Plaintiffs need to assist the Court in determining the truth by seeing communications about the Program and asking state and county officials about the Program's operation in depositions.[1] That information will affect this Court's assessment of irreparable harm, the public interest, and the state's purported interest in the Program.

- Plaintiffs have retained an expert to assess who has been removed or otherwise affected by the Purge Program and how. Plaintiffs must obtain the Purge List and voter file for that analysis, including to determine changes in status by comparing

---

[1] On page four of Plaintiffs' Emergency Motion for Expedited Discovery, Plaintiffs erroneously indicated that they are seeking a deposition of the Board of Registrars of Madison County rather than Marshall County. ECF 5 at 4. Plaintiffs notified Defendants' counsel of the error via email on September 25, 2024, as soon as it was discovered.

3

voter file snapshots at two points in time. Further, knowing the size of the list and who is on it will help assess how Organizational Plaintiffs have been harmed by the Program, as well as this Court's assessment of how enjoining the Program would affect the public interest.

- Information about errors in the Program's execution or methodology will be vital to determining existing and potential harm to Plaintiffs and other Alabamians, as well as whether the Program is narrowly tailored.

- Defendants have promised to "submit exhibits that will include relevant materials" about the Purge Program shortly. ECF 43 at 10. Fairness dictates that Plaintiffs should have the opportunity to test that evidence through discovery.

- Information about the data sources used to generate the Purge List will bear on how the Program discriminates against naturalized citizen voters.

- Depositions of County Boards of Registrars will assist in ascertaining how many people have filled out a voter removal form based on the misleading Purge Letter, which is relevant to irreparable harm and the public interest.

B.     **Plaintiffs have compelling reasons for expedited discovery.**

Defendants complain that "Plaintiffs do not explain why they need [discovery] *now*." ECF 43 at 8. But of course, Plaintiffs' motion explained that discovery "is urgent because of the brief time until the 2024 general election." ECF 5 at 8. Much of the harm created by the Purge Program involves obstacles to voting in *this*

4

election, and delaying discovery until after the election would let that harm go unaddressed. That is especially apparent when one of Plaintiffs' claims is made under the 90 Day Provision of the NVRA, which seeks to prevent voter removals just before the election. *See* ECF 23 at 9-16.

For these reasons, courts have routinely granted expedited discovery in similar time-sensitive cases, particularly in the elections context. *See, e.g., Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) (expediting discovery in order to allow for relief before election)*; People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076, 1143 (N.D. Ala. 2020) (granting expedited discovery in light of the "important issues this case presents regarding voting in an upcoming election," which was 34 days away); *Doe v. Samford*, 2:21-cv-00871, 2021 WL 3403517, at *3-4 (N.D. Ala. July 30, 2021); *Common Cause Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1301 (N.D. Ga. 2018).

### C. Defendants' forthcoming motion to dismiss underscores the importance of limited discovery into the secretive Purge Program.

Defendants suggest that because they have promised to file a motion to dismiss, the Court should halt all discovery, notwithstanding Plaintiffs' already-filed motion for preliminary injunction. *See* ECF 43 at 4-5. That argument flips the expedited discovery standard on its head and creates perverse litigation incentives.

First, the principle that discovery should commence only after motions to dismiss have been decided gets the expedited discovery standard entirely backwards,

5

and is especially wrong when a preliminary injunction motion has already been filed. Even when no such motion is pending, "[t]he mere filing of a dismissal motion, without more, does not" support staying discovery, and "a court must determine whether the party seeking the stay has established the existence of 'good cause' for the requested delay." *OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 304 (N.D.N.Y. 2006) (quoting Fed. R. Civ. P. 26(c)). When a preliminary injunction motion *is* pending, that fact is the very first consideration courts weigh. *See SA&H Ala. Holding, LLC v. Shoemaker*, No. 5:23-cv-01519, 2023 WL 9105651, at *1 (N.D. Ala. Nov. 28, 2023) ("[E]xpedited discovery is more likely to be appropriate when a plaintiff is seeking a preliminary injunction." (quoting *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021))).

Unsurprisingly, then, two of the three cases Defendants cite did not involve a pending preliminary injunction motion. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997); *Attkisson v. Holder*, 113 F. Supp. 3d 156 (D.D.C. 2015). And in the third case, the court denied the motion for expedited discovery because it was filed *after* the defendants filed their motion to dismiss, demonstrating a "lack of urgency in seeking expedited discovery." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014). Plaintiffs here filed the emergency motion for expedited discovery just four days after the complaint and moved for a preliminary injunction just six days after that. Judges within the Eleventh Circuit have routinely emphasized the

importance of a pending motion for preliminary injunction and associated good cause, *not* a motion to dismiss. *See, e.g., Doe*, 2021 WL 3403517, at *4 (granting expedited discovery to accommodate preliminary injunction timeline despite the existence of a pending motion to dismiss).

Second, Defendants' principle would create an incentive for litigants to file a motion to dismiss simply to prevent expedited discovery even when it would otherwise have been appropriate, hindering courts from ever issuing injunctive relief in time-sensitive cases like this one.

Third, without expedited discovery, Defendants' selective fact release would warp this Court's merits review. Defendants have promised to reveal what they believe are the "relevant materials" but want to shroud any other facts in secrecy. ECF 43 at 10. And that dynamic is all the more troubling because some of Defendants' claims about the true nature of the Purge Program are directly at odds with the testimony of Declarants. *See, e.g.,* ECF 23-29 at ¶¶ 12-13.

## II. Plaintiffs' Discovery Request Is Narrowly Tailored, and the Burden to Defendants Is Minimal.

Defendants spend most of their ink arguing that Plaintiffs' discovery request is too broad and burdensome, but they consistently overstate the scope of the request and their burden in complying.

First, unable to credibly argue that public records within Defendants' possession and that Defendants themselves have regularly provided in similar

7

litigation would be burdensome to produce, they instead argue that "a subset of the documents they seek," the voter file, "is readily available to Plaintiffs through other means." ECF 43 at 2. But that is as wrong as it is irrelevant. Records for which Defendants seek huge sums of money from Plaintiffs to produce may be readily available to Defendants, but they are in no sense "readily available" to Plaintiffs. Regardless, the relevant inquiry is whether the information could be obtained "expeditiously" and "more efficiently" from "*some other source*"—not whether Plaintiffs have exhausted all other avenues for coaxing Defendants, the *same* source, into producing those materials. *SA&H Ala. Holding,* 2023 WL 9105651, at *1 (N.D. Ala. Nov. 28, 2023) (emphasis added); *see also* ECF 43 at 9 ("Defendants are not aware of another source for what Plaintiffs seek."). And even if Plaintiffs paid Defendants the requested sums, without a discovery order there would be no guarantee that Defendants would produce the records on the expedited timeline Plaintiffs require—in fact, they would have every incentive not to do so.

Second, Defendants make hay of having to produce documents related to the Purge Program—for example, the Purge List—despite having already provided "overlapping" documents to the U.S. Department of Justice. ECF 43-3 at 2; *see, e.g.,* ECF 43 at 7. Defendants do not even attempt to explain why it would be burdensome to locate and share documents they have already shared.

Finally, Defendants describe the requested depositions as "exceptionally broad." ECF 43 at 6. But as the Court can see from the deposition topics proposed, ECF 43-1, ranging from one to four topics for each witness, Plaintiffs simply ask for abbreviated depositions on the Purge Program itself, which only began last month. They have not sought to ask broader questions about Alabama's treatment of naturalized citizen voters, for example. Depositions of the Secretary's office, the agencies who provided information for the Purge List, and the Lee County Board of Registrars[2] are especially important to determine the Purge Program's scope, how the Purge List was created, and how the Program is operating.

The only relevant case Defendants cite illustrates how targeted Plaintiffs' request actually is. In *Socal Dab Tools, LLC v. Venture Technologies, LLC*, the topics included "'[a]ll communications,' . . . without limitation as to time period and with minimal limitations as to subject matter," along with five requests for "'[a]ll documents,' or all documents of a particular category, without limitation as to time period and with minimal limitations as to subject matter." No. 2:22-CV-128-MHT-SMD, 2022 WL 19977793, at *2 (M.D. Ala. Apr. 25, 2022). Plaintiffs here, by contrast, have proposed topics limited in time frame to the existence of the Purge Program, which was announced only 45 days ago, and limited in subject matter to

---

[2] The Lee County Board of Registrars initially refused to allow Declarant Jose Sampen to re-register although he appeared in person with his passport. *See* ECF 23-29 at ¶¶ 12-13.

9

specific features of that Program. Those narrow requests are all the more reasonable given that information about the Program is uniquely within Defendants' possession.

In short, Plaintiffs seek three types of discovery materials: records, like voter files, which are allegedly burdensome to produce—but which would become "readily available" if Plaintiffs paid tens of thousands of dollars, ECF 43 at 2; documents related to the Purge Program, which Defendants say would be burdensome to "locate[], review[], and perhaps redact[]," ECF 43 at 9—but which they have already provided, at least in part, to the Department of Justice, ECF 43-3 at 2; and information about the operation of the Program, through targeted three-hour depositions, which is supposedly burdensome to learn—but which Defendants will describe in "detail[] . . . in a forthcoming declaration," ECF 43 at 3. The burden to Defendants, then, by their own actions and admissions, is low.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for expedited discovery.

Date:  Sept. 27, 2024                                    Respectfully submitted,

/s/ Joseph Mitchell McGuire                     /s/ Danielle Lang
Joseph Mitchell McGuire (ASB-8317-S69M)    Danielle Lang*
MCGUIRE & ASSOCIATES, LLC              Brent Ferguson*
31 Clayton Street                                       Kathryn Huddleston*
Montgomery, Alabama 36104                   Kate Hamilton*
334-517-1000 Office                                  Shilpa Jindia*
334-517-1327 Fax                                      CAMPAIGN LEGAL CENTER

jmcguire@mandabusinesslaw.com

/s/ Michelle Kanter Cohen
Michelle Kanter Cohen (D.C. Bar No. 989164)*
Nina Beck (WI State Bar No. 1079460)*
Jon Sherman (D.C. Bar No. 998271)*
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 701
Washington, D.C. 20006
(202) 331-0114
mkantercohen@fairelectionscenter.org
nbeck@fairelectionscenter.org
jsherman@fairelectionscenter.org

*admitted pro hac vice
**application for admission forthcoming

1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
khuddleston@campaignlegalcenter.org
khamilton@campaignlegalcenter.org
sjindia@campaignlegalcenter.org


/s/ Ellen Degnan
Ellen Degnan, ASB 3244I12V
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
(334) 313-0702
ellen.degnan@splcenter.org


/s/ Jess Unger
Bradley Heard*
Sabrina Khan**
Jess Unger*
Southern Poverty Law Center
1101 17th Street NW
Suite 550
Washington, DC 20036
bradley.heard@splcenter.org
sabrina.khan@splcenter.org
jess.unger@splcenter.org

/s/ Ahmed Soussi
Ahmed Soussi*
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
ahmed.soussi@splcenter.org

11

## CERTIFICATE OF SERVICE

I certify that on September 27, 2024, I electronically filed the above document with the Clerk of Court using the ECF system, which will provide electronic copies to counsel of record.

/s/ Danielle Lang<br>
Danielle Lang