UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALABAMA COALITION FOR IMMIGRANT JUSTICE, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No.: 2:24-cv-1254-AMM<br>) |
| WES ALLEN, in his Official Capacity as Alabama Secretary of State, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 2:24-cv-1329-AMM<br>) |
| STATE OF ALABAMA and WES ALLEN, in his Official Capacity as Alabama Secretary of State, | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

# **ORDER**

These cases allege that Alabama Secretary of State Wes Allen unlawfully began a process ahead of the 2024 General Election to inactivate 3,251 registered Alabama voters who were previously issued noncitizen identification numbers by the United States Department of Homeland Security, then have eligible individuals

undergo a reregistration process to verify their citizenship or ultimately face removal from the voter rolls. *See Alabama Coalition for Immigrant Justice v. Allen*, No. 2:24-cv-1254 (asserting constitutional and statutory claims); *United States of America v. Allen*, No. 2:24-cv-1329 (asserting a statutory claim).

Now before the court is an Emergency Motion for Expedited Discovery filed by plaintiffs in No. 24-1254 ("plaintiffs"). Doc. 5.[1] The court set a briefing schedule for plaintiffs' motion based on the parties' proposed deadlines. Doc. 31. Defendants responded to the motion. Doc. 43. Plaintiffs replied. Doc. 44. For the reasons explained below, the Emergency Motion for Expedited Discovery, Doc. 5, is **GRANTED** in part and **DENIED** in all other respects.

I.   BACKGROUND

Plaintiffs allege that on August 13, 2024, Secretary Allen announced a program to inactivate 3,251 registered Alabama voters who were previously issued noncitizen identification numbers by the United States Department of Homeland Security, then have eligible individuals undergo a reregistration process to verify their citizenship or ultimately face removal from the voter rolls (the "Program")[2].

---

[1] Unless stated otherwise, the documents cited by the court are from No. 24-1254.

[2] The court does not use the word "program" as an implicit finding of fact as to the merits of plaintiffs' claim or applicable federal law. Instead, the court uses the term as a moniker for the complained-of "process" announced by Secretary Allen's office in August 2024. Doc. 1-1. The court will make factual findings at the appropriate time.

Doc. 1 ¶¶ 64–67. Plaintiffs refer to this as the "Purge Program." *See, e.g.*, *id.* ¶ 2. The Program, as plaintiffs allege, "is tantamount to removal of voters on the Purge List from the voter rolls" and targets naturalized citizens because they were presumably issued noncitizen identification numbers prior to becoming citizens. *Id.* ¶¶ 66, 68, 77. Moreover, plaintiffs point to Secretary Allen's August 13, 2024 press statement announcing the Program to allege that "Secretary Allen referred those on the Purge List to the Attorney General for investigation and prosecution while simultaneously admitting the possibility—and in fact, the virtual certainty—that the Purge List includes naturalized citizens." *Id.* ¶ 70 (emphasis omitted). The same press statement indicates that Secretary Allen "will continue to conduct such reviews" and the Program is, therefore, an ongoing process. Doc. 1-1 at 3 (internal quotation marks omitted).

Following Secretary Allen's announcement, county Boards of Registrars throughout Alabama began sending letters to individuals on the alleged Purge List. Several recipients are plaintiffs in this action. Plaintiffs allege that these letters "are confusing, because they both direct all recipients—with no exceptions—to complete a voter removal request form to 'become compliant with state and federal law requirements' and direct recipients who are U.S. citizens eligible to vote to complete an Alabama voter registration form." Doc. 1 ¶ 75 (emphasis omitted). These eligible citizens must also provide their Alabama driver's license number, Alabama non-

3

driver identification number, or the last four digits of their Social Security number. *Id.* ¶ 76.

Secretary Allen created the alleged Purge List based on information regarding noncitizen identification numbers that he obtained from state agencies, including the Alabama Law Enforcement Agency and the Alabama Department of Labor. *Id.* ¶ 84; Doc. 43 at 3. According to the plaintiffs, the Program erroneously includes natural born citizens due to Alabama agencies identifying them as having had a noncitizen identification number. Doc. 1 ¶ 113. For example, Plaintiff James Stroop, a natural born citizen, was purportedly misidentified as having been issued a noncitizen identification number and, as a result, included on the Purge List. *Id.* ¶ 114.

On August 19, 2024, Plaintiffs Alabama Coalition for Immigrant Justice, League of Women Voters of Alabama, and Alabama NAACP, among others, requested information about the Program as part of a pre-suit notice letter sent to Secretary Allen pursuant to the National Voter Registration Act. *Id.* ¶ 123; Doc. 1-2. Secretary Allen's office produced no responsive documentation with its initial letter on September 6, 2024, but indicated that a response to the document request was forthcoming. Doc. 1-3 at 3.

Plaintiffs filed suit in this court on September 13, 2024. Doc. 1. They assert seven claims against Defendants Secretary Allen, Alabama Attorney General Steve Marshall, Chair of the Elmore County Board of Registrars Jan Bennett, Chair of the

4

Jefferson County Board of Registrars Barry Stephenson, Chair of the Lee County Board of Registrars Cindy Willis Thrash, and Chair of the Marshall County Board of Registrars Shelia Cox Barbuck in their official capacities. *Id.* ¶ 62; *id.* at 52–64.

Then, on September 17, 2024, plaintiffs filed an Emergency Motion for Expedited Discovery in connection with a forthcoming motion for preliminary injunction. Doc. 5. Plaintiffs make seven requests, which they believe are "necessary for rigorous evaluation of the likelihood of success on the merits and the public interest in enjoining Secretary Allen's Purge Program." *Id.* at 2. Specifically, plaintiffs seek the following:

1. The list of 3,251 people whom Secretary Allen "has subjected to the Purge Program," including their name, the state agency that provided their information, the date on which the relevant agency received the information that resulted in their inclusion on the list, the voter's current registration status, and the date of the last change in the individual's voter registration status;

2. The Alabama voter file snapshot for August 13, 2024, and a current voter file snapshot which includes the date of said snapshot;

3. "[A]ny and all memoranda, policies, reports, data, summaries, correspondence, or similar documents relating to the development of the Purge Program;"

4. "[A]ny and all memoranda, policies, reports, data, summaries, correspondence, or similar documents relating to the development of the Purge List, including any and all data files provided by the Alabama Law Enforcement Agency, the Alabama Department of Labor, and any other federal, state, or local governmental agency that provided data for the development of the Purge List;"

5. "[A]ny and all instructions, guidance, memoranda, policies, reports, data, summaries, training, correspondence, or similar documents developed by the Secretary of State and sent to Boards of Registrars in implementation of the Purge Program;"

6. "[A]ny and all memoranda, policies, reports, data, summaries, correspondence, or similar documents relating to the development of notice letters and enclosures sent by Defendants to registered voters on the Purge List; and"

7. Three-hour depositions of the Office of the Secretary of State; the Office of the Attorney General; the Elmore, Jefferson, Lee, and Marshall[3] County Board of Registrars; the Alabama Law Enforcement Agency; and the Alabama Department of Labor. Doc. 5 at 2–4.

Within five hours of the case's reassignment to the undersigned, the court set a telephonic status conference for the next day, September 20, 2024, in which the

---

[3] The motion lists this as Madison County. Doc. 5 at 4. In their reply, plaintiffs state that this was a typographical error and informed the defendants of said error via email. Doc. 44 at 4 n.1.

parties represented their intent to file a motion for preliminary injunction and a motion to dismiss in the coming days. The court emphasized that prompt conferral by the parties was necessary to narrow issues, reach possible agreement on discovery, and develop a schedule suitable for the constrained timeline. *See* Doc. 28. That same day, Secretary Allen's office sent an additional follow-up letter regarding the production of certain records to plaintiffs. Doc. 43-3.

Ten days after filing their suit, on September 23, 2024, plaintiffs filed a motion for a preliminary injunction. Doc. 23. The next day, the parties conferred regarding plaintiffs' requested discovery. They reported to the court that agreement on resolution of the motion for expedited discovery could not be reached and proposed a briefing schedule, Doc. 30 at 2–3, which the court adopted thirty-three minutes later, Doc. 31. The court later set October 15, 2024 as the hearing date for all motions. Doc. 46. Plaintiffs' Emergency Motion for Expedited Discovery is now fully briefed.

On September 27, 2024, the United States filed a separate lawsuit asserting one claim – that under federal law, the Program is unlawful because Secretary Allen undertook the Program within ninety days of Election Day. Doc. 1 in No. 2:24-cv-1329. The court consolidated the cases on September 28, 2024. Doc. 45.

7

## II.  LEGAL STANDARD

"A party may not seek discovery from any source before the parties have conferred as required by [Federal Rule of Civil Procedure] 26(f), except . . . when authorized by these rules, by stipulation, or *by court order*." Fed. R. Civ. P. 26(d)(1) (emphasis added). "[D]istrict courts within the Eleventh Circuit have established that '[a] district court may expedite the discovery process if a party moves for expedition and establishes "good cause" for it.'" *SA&H Ala. Holding, LLC v. Shoemaker*, No. 5:23-CV-01519-LCB, 2023 WL 9105651, at *1 (N.D. Ala. Nov. 28, 2023) (quoting *Mullane v. Almon*, 339 F.R.D. 659, 662 (N.D. Fla. 2021). Moreover, "the Advisory Committee notes to the 1993 amendment for [Federal Rule of Civil Procedure] 26(d) explain that discovery can begin before the parties have conferred in some cases, 'such as those involving requests for a preliminary injunction.'" *Id.* (quoting Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment). Thus, expedited discovery is the exception, not the norm.

"A party seeking expedited discovery bears the burden of establishing good cause." *Mullane*, 339 F.R.D. at 663. "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *SA&H Ala. Holding, LLC*, 2023 WL 9105651, at *1 (quoting *TracFone Wireless, Inc. v. Holden Prop. Servs., LLC*, 299 F.R.D. 692,

8

694 (S.D. Fla. 2014)). In determining whether good cause exists, courts consider the following nondispositive factors:

> (1) whether a motion for preliminary injunction is pending;
> (2) the breadth of the requested expedited discovery;
> (3) the reasons the moving party is requesting expedited discovery;
> (4) the burden on the opponent to comply with the request for expedited discovery;
> (5) whether the information sought expeditiously could be obtained more efficiently from some other source;
> (6) the extent to which the discovery process would be expedited; and
> (7) whether a motion to dismiss for failure to state a claim is pending.

*Id.* (quoting *Mullane*, 339 F.R.D. at 663). Regardless of the precise framework utilized, district courts have "discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001).

### III. ANALYSIS

Plaintiffs contend that all seven factors weigh in favor of their request for expedited discovery and emphasize the urgency of the matter due to the impending voter registration deadline of October 21, 2024, and general election on November 5, 2024. Doc. 5 at 7–8. Plaintiffs further contend that only the defendants can produce the relevant information necessary to ascertain the details of the development and implementation of the Program. *Id.* at 9. And, pointing to Secretary Allen's failure to produce materials as requested in their August 19, 2024 pre-suit

9

notice letter, plaintiffs assert they have exhausted all other reasonable avenues of obtaining this information. *Id.* at 9–10.

Defendants resist the motion on the ground that plaintiffs make conclusory arguments which "come nowhere close to showing that good cause exists to require expedited discovery." Doc. 43 at 1. Moreover, defendants contend, and the court generally agrees, that plaintiffs' seven requests are overbroad for this preliminary stage of the litigation, which is necessarily expedited. *Id.* at 5–7. But, additional arguments made by defendants underscore why limited discovery is needed, especially for the purposes of determining jurisdiction. For example, while previewing their forthcoming motion to dismiss, defendants present facts about the mechanics of Secretary Allen's program. *See, e.g.*, *id.* at 3–4. If the court needs to understand these facts, then some discovery appears necessary.

Accordingly, the court finds that limited discovery will be necessary for the court to assess its jurisdiction over the plaintiffs' claims and evaluate their request for preliminary injunctive relief. Because Secretary Allen already has produced to the United States some of the information the plaintiffs seek, the court finds that discovery of that information will not unduly burden the defendants. Therefore, the court **GRANTS** in part and **DENIES** in part plaintiff's Emergency Motion for Expedited Discovery, Doc. 5. Specifically, at this time, discovery is limited to discovery necessary to determine what actions have been taken by Secretary Allen's

office in connection with the Program and the timeline of such actions. All preliminary discovery shall close on October 11, 2024.

The parties shall hew strictly to the limited scope of preliminary discovery. To that end, the court examined each discovery request presented by the plaintiffs in their motion and representations throughout the briefings to date. The court finds that the following proposed discovery falls within the scope:

1. Both parties discussed documents disclosed by Secretary Allen to the United States Department of Justice as part of its inquiry of this matter ("the DOJ Documents"). If the plaintiffs propound a discovery request for those documents, Secretary Allen shall produce said documents to plaintiffs within three days and shall do so without charging plaintiffs the fees contemplated in the September 20, 2024 letter from his general counsel, Doc. 43-3.

2. Within three days of this order, Secretary Allen shall produce, (1) the Alabama voter file snapshot for August 13, 2024, (2) a current voter file snapshot which includes the date of said snapshot, and (3) the document the plaintiffs have described as the Purge List, if these documents are not included in the DOJ Documents. Secretary Allen shall not charge plaintiffs a fee for this production as it is produced for the purposes of discovery instead of public disclosure law.

3. The court understands from a telephone conference held on September 30, 2024 that a protective order and/or redactions may be required to

11

facilitate the productions ordered above. If the parties are unable to agree on a stipulated protective order, defendants may request one from the court.

4. Defendants attached plaintiffs' topics for depositions under Federal Rule of Civil Procedure 30(b)(6) to their response. Doc. 43-1. At this time, the court will permit a two-hour Rule 30(b)(6) deposition of the Alabama Secretary of State's office on actions taken by Secretary Allen's office and the timeline of those actions. Topic number one listed under the deposition topics for Secretary Allen's office falls within the scope of the allowed preliminary discovery. A limited version of topic number two also falls within the scope of the allowed preliminary discovery – namely, communications between Secretary Allen's office and county Board of Registrars regarding the Program. All other topics and deponents listed in Doc. 43-1 fall outside the permissible scope of this discovery. The court emphasizes its understanding that some of this discovery may be appropriate at a later time but simply is not practicable or reasonable on the extremely compressed timetable presently facing the court and the parties.

If any party desires discovery outside the scope discussed in this order, that party must request leave from the court. The court encourages the parties to cooperate in a manner consistent with this order. After the conclusion of the preliminary injunction proceedings, if the court finds that it has jurisdiction, the parties will have the opportunity to conduct additional discovery. This limited,

expedited discovery is not meant to replace the ordinary course of discovery that is to occur if this case proceeds.

## IV.   CONCLUSION

The court **GRANTS** in part plaintiffs' Emergency Motion for Expedited Discovery, Doc. 5, to the extent discussed above. The motion, Doc. 5, is **DENIED** in all other respects.

**DONE** and **ORDERED** this 1st day of October, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE