UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA COALITION FOR IMMIGRANT JUSTICE, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No.: 2:24-cv-01254-AMM |
| WES ALLEN, in his official capacity as Alabama Secretary of State, *et al.*, | ) ) ) ) ) | |
| *Defendants*. | ) | |
| | | |
| UNITED STATES OF AMERICA, | ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Case No.: 2:24-cv-01329-AMM |
| STATE OF ALABAMA and WES ALLEN, in his official capacity as Alabama Secretary of State, | ) ) ) ) ) ) | |
| *Defendants*. | ) | |

**S**ECOND **D**ECLARATION OF **C**LAY **H**ELMS

My name is Clay Helms.  I am over the age of 19 and competent to provide testimony in this matter.  The facts I have set out below are based upon my personal



DEFENDANT'S EXHIBIT
S

knowledge and/or the records of the Alabama Secretary of State's office maintained in the ordinary course of business.

1. I am the Chief of Staff for Secretary of State Wes Allen, a position I have held since Secretary Allen took office in January 2023.

**UPDATED NUMBERS**

2. My original declaration in these consolidated cases explained that the noncitizen letter process began with 3,251 individuals, 453 of whom were already Inactive before the August letters were ever sent.

3. As of when PowerProfile was checked on October 8, 2024, of the original 3,251 individuals, **1,049** are **Active**, **2,043** are **Inactive**, and **159** are **Disqualified,** irrespective of whether PowerProfile contains a scanned copy of the submitted Voter Removal Request, NVRA-25. (For more information about this last category, please see paragraphs 56 and 57 of my original declaration.)

4. A few individuals who self-removed using the Voter Removal Request, NVRA-25, took the additional step of affirmatively explaining that they are not citizens. An explanation was not required to complete the form.

**RESPONSE TO DECLARATION OF NATASHA AUST**

5. The United States provided a declaration from Natasha Aust concerning ALEA records showing a Certificate of Naturalization (47 records,

including duplicates) or a Certificate of Citizenship (five records). I have been in touch with ALEA about this.

6. ALEA reported that, for each individual, either (1) the certificate was provided to them *after* the initial matches were sent to us or (2) as a result of examiner error, a FN (foreign national) credential (license or non-driver ID) was issued despite the Certificate. Further, four of the certificates could not be verified in SAVE, thus, these individuals are not confirmed citizens.

7. Concerning the first group, ALEA provided the Secretary's office with a list of matches. We asked ALEA to add noncitizen identification numbers data ALEA had on file to that list. My understanding is that ALEA thought that we would also need the Document Type field so that the particular number for each individual to make sense. We deferred to ALEA on that front, assuming both fields would only come into play at the point we were actually using the additional data to match to a federal database. We were still working with USCIS at the time (we met with ALEA about this issue right before the USCIS videoconference). We did not need either the noncitizen identification number or the Document Type field to conduct the current noncitizen letter process. As such, we did not delve into Document Type field before we received the Aust declaration.

8. Of the individuals for whom ALEA is able to confirm citizenship, I understand that there are 14 unique individuals who were Inactive as of the morning

of October 8, 2024, while the others were either Active or removed for reasons having nothing to do with the noncitizen letter process. The 14 unique Inactive individuals each reside in one of eight counties. Director of Elections Jeff Elrod contacted the Boards of Registrars in those counties yesterday and instructed them to make Active the ALEA-confirmed citizen(s) in their county and send Voter Information Cards to these voters. As of this morning, PowerProfile shows each of these 14 individuals has been made Active.

9. The individual who has Certificate of Naturalization in the Document Type field and R in the Status field—as described in paragraph 20 of the Aust declaration—has been Disqualified because the Bullock County Board of Registrars determined, based on information from the voter and their investigation, that the voter moved out of State.

**VOTER DECLARANTS FOR THE UNITED STATES**

10. Two individuals signed declarations which the United States filed in support of their motion for preliminary injunction: Saul Jimenez and Jennifer Berg. Director of Elections Elrod has checked PowerProfile to determine the status of these two individuals.

11. According to PowerProfile, Saul Jimenez is currently an Active voter on Alabama's voter registration rolls; he was made Active on September 23, 2024. This means that he will be able to vote in the 2024 General Election without taking

any further steps attributable to the noncitizen letters. Further, according to PowerProfile, a Voter Information Card confirming his Active status was created on September 25, 2024.

12. According to PowerProfile, Jennfer Berg is currently an Active voter on Alabama's voter registration rolls; she was made Active on August 30, 2024. This means that she will be able to vote in the 2024 General Election without taking any further steps attributable to the noncitizen letters. Further, according to PowerProfile, a Voter Information Card confirming her Active status was created on August 30, 2024.

**INACTIVE VOTERS CAN STILL VOTE**

13. In my original declaration, I explained that voter registration forms are routinely used to update voter registration, but also that reidentification/update forms will be available at the polls on Election Day, and that Inactive voters can submit those forms and then vote a regular ballot (assuming there are no address issues, as previously described in paragraph 86 of my original declaration and the Alabama polling Official Guide 2024, attached thereto).

14. This morning, I was the Secretary's witness in a Rule 30(b)(6) deposition of the Secretary's office.

15. I was asked in deposition today if an Inactive voter voting absentee would have to update before voting. All inactive voters—including those who

received noncitizen letters—are treated the same way. If their physical address on the absentee ballot application matches the physical address where the voter is registered, the absentee election manager should send the voter a regular ballot which will count. However, the Inactive voter will not be made Active until he or she submits a voter registration form or a reidentification/update form.

16. I was asked in deposition today what would happen if an Inactive voter voting in person at the polls on Election Day was not handed a reidentification/update form. If the poll worker failed to require the form to be filled out, and assuming there are no address issues, the voter would simply be allowed to vote a regular ballot. The ballot will be scanned into the tabulator and intermingled with all the other regular ballots. It will not be singled out for different treatment. As with the absentee voter, the Inactive voter will not be made Active until he or she submits a voter registration form or a reidentification/update form.

17. I was asked in deposition today what the verification process would be for an Inactive voter voting at the polls who completes a reidentification/update form and when that verification would happen. Once the voter completes the reidentification/update form and hands it to the poll worker, and assuming no address issues, the voter will cast a regular ballot. The ballot will be scanned into the tabulator and intermingled with all the other regular ballots. It will not be singled out for different treatment. Thereafter, the Board of Registrars will enter the

information from the reidentification/update form into PowerProfile.  When they click Save, PowerProfile runs a check against the ALEA and/or Social Security databases, as well as against others.  If the information is confirmed, the voter will be made Active.  If the voter's information cannot be confirmed, the voter will remain Inactive.

18. We do not have a way to be certain of how many reidentification/update forms have been completed at the polls on a given Election Day because the various Registrars throughout the State may not record the information consistently.  We can determine how many *fields* have been updated during a particular time frame as a way to gauge how effective and widespread the use of reidentification/update forms at the polls is.  If a voter updates his or her address, then multiple changes are recorded because the address is stored in PowerProfile across multiple fields.  Similarly, if a voter changed his or her name and moved, changes to multiple fields would be recorded.  Director of Elections Elrod pulled the following stats from PowerProfile showing the number of updated fields during one-week periods containing an election and, for comparison, one-week periods that do not contain an election.

|  | Number of Updated Fields ||
|---|---|---|
|  | **Random Sample Week** | **Election Week** |
| **2020 (Presidential election year)** |||
|  | 48,902<br><br>June 8 – June 15 | 100,000<br>(*max reportable results*)<br><br>Nov. 3 – Nov. 10<br>(General Election) |
| **2022** |||
|  | 39,659<br><br>Aug. 22 – Aug. 29 | 66,252<br><br>Nov. 8 – Nov. 15<br>(General Election) |
| **2024 (Presidential election year)** |||
|  | 32,604<br><br>Jan. 8 – Jan. 15 | 48,902<br><br>March 5 – March 12<br>(Primary Election) |

19. As I noted in my original declaration, registration requires an Alabama Driver's License or Non-Driver ID number or, if the applicant does not have either, the last four digits of the applicant's Social Security Number.

20. Prior to earlier this year, voter registration applicants who had these numbers might nonetheless not provide them on the voter registration application and their application could still be accepted. For example, the Colbert County voter, for whom documents are included in Exhibit 27 to my original declaration, has "not found" and dates next to both the *SSN* field and the *DL or ID#* field.

8

21. In fact, these numbers are an important part of confirming identity, including U.S. citizenship, and thus should be provided when they exist. Only if an applicant does not have these numbers, should the State assign a number for voting purposes. Thus, the Secretary's office instructed Registrars back in July that voter registration forms for first time registrants that provide data which cannot be verified should be rejected. (A declaration is provided for first time registrants who do not have either a driver's license or nondriver ID number or a Social Security number.)

22. Around the end of May 2024, our office determined that approximately 294,000 individuals were Active registered voters whose Driver's License number, Non-Driver ID number, or last four of their Social Security Number had not been provided or was not verified at registration under prior administrations' policies. We instructed the Registrars to attempt to re-verify these individuals. Subsequently, we instructed the Registrars to send a letter seeking verification to any individual for whom this attempt to re-verify did not result in verification. Statistics are not readily available, but my understanding is that the attempt to re-verify was successful for many. We did not instruct the Registrars to make anyone Inactive as a result of this process, but we have been clear that, going forward, voter registration applications for first time registrants which cannot be verified should be rejected. We do not have any current plans to take further action with respect to the list of approximately 294,000 voters.

**THE NONCITIZEN LETTER PROCESS**

23. The Secretary of State's noncitizen letter process did not change between the August 13 template letter and the September 18 template letter. Rather, the September 18 letter more thoroughly and better explained the process as it was—and is—being implemented. For instance, as I testified today, we have always understood that all Inactive voters have the option to complete reidentification/update forms at the polls, and that applies to the individuals who received a noncitizen letter. The September template letter sent to Registrars as part of the noncitizen letter process also addressed Election Day as the deadline for voter registration was drawing closer. The substance of that September letter is set out in my original declaration at paragraph 47.

24. That said, we have worked to adapt to issues as they arise. This is no different from how elections work happens separate and apart from the noncitizen letter process.

25. Working to make Active those 14 unique individuals for whom ALEA is now able to confirm citizenship is an example of this office's adaptation. Another example is our September 5, 2024 instructions to the Boards of Registrars that any Inactive voter for whom a driver's license number or Social Security number on file *can* be verified should be made active. I mentioned this in paragraph 62 of my original declaration, and the email communication to the Registrars is Exhibit 23

thereto. (It does sometimes happen that numbers which cannot initially be verified for whatever reason can be verified when re-submitted.)

26. In paragraph 60 of my original declaration, I explained that our office has been provided documents indicating that some individuals were apparently registered in error. Specifically, four voters completed ALEA Driver License or Identification Card Change of Address forms and did *not* complete the voter registration portion of the form but were nonetheless registered. It is appropriate for these forms to be sent by ALEA to the Boards of Registrars or our office so that the address information of *registered* voters may be updated. Our office has previously instructed the Registrars that they should not register any first time registrant based on this form where the voter registration portion of the form is not completed and signed. In light of the errors which have been brought to our attention as a part of the noncitizen letter process, Director of Elections Elrod yesterday reminded the Registrars of our prior guidance.

THE EFFICACY OF THE NONCITIZEN LETTER PROCESS

27. Some questions posed during the deposition today seemed to me to suggest that the noncitizen letter process was not effective at stopping noncitizens from voting since, as set out above, noncitizens might evade completing a voter registration or reidentification/update form or might submit a reidentification/update form at the polls that contains identifying numbers which cannot be verified.

Additionally, I was asked if the noncitizen letter process would catch a noncitizen who stole the identity of a citizen and registered to vote, and I acknowledged that it was not able to catch that fraud.

28. The noncitizen letter process is an attempt by the Secretary of State's office to take action within the confines of the law as we understand it and within the constraints imposed on us by the United States's refusal to share citizenship information with our office.

29. If the United States will confirm in writing the U.S. citizenship of any of the 2,043 voters who remain Inactive as a result of the noncitizen letter process, the Secretary of State's office will gladly instruct the Registrars to make the confirmed individuals Active and send Voter Information Cards to these voters.

30. The Secretary of State's office remains open to entering into an agreement with the United States to provide the State with more accurate information to be used in future reviews (which reviews, as I previously testified, will take place *after* the 2024 General Election).

31. And, again, while the Secretary has no intention of, before the 2024 General Election, making additional voters Inactive as a result of any noncitizen efforts, the Secretary remains committed to finding ways to remove noncitizens who are on the voting rolls and protect the integrity of Alabama's election process.

\* \* \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 9, 2024.

*[signature]*

Clay Helms
Chief of Staff
Office of the Secretary of State
State of Alabama