FILED
2024 Nov-20  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA COALITION FOR IMMIGRANT JUSTICE, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No.: 2:24-cv-01254-AMM |
| | ) | |
| WES ALLEN, in his official capacity as Alabama Secretary of State, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.: 2:24-cv-01329-AMM |
| | ) | |
| STATE OF ALABAMA and WES ALLEN, in his official capacity as Alabama Secretary of State, | ) | |
| | ) | |
| *Defendants*. | ) | |

### ANSWER TO THE UNITED STATES OF AMERICA'S COMPLAINT

The State of Alabama and Hon. Wes Allen, who is sued in his official capacity as Secretary of State for the State of Alabama, respectfully answer the United States of America's Complaint, doc. 1, as follows:

### "Complaint"

1.     Admitted that only U.S. citizens are eligible to vote in U.S. federal elections, and that the State and the United States agree on that point. Any suggestion that only federal elections are relevant is denied. While the National Voter Registration Act of 1993, 52 U.S.C. §§ 20501 *et seq.*, applies only to federal elections, individuals register simultaneously to vote in Alabama's federal, State, county, and municipal elections—all of which are limited to U.S. citizens, and some of which (State and county elections) are regularly held simultaneously with federal elections. As to the second clause of the second sentence, the adjective "widespread" is vague and undefined such that the State Defendants lack sufficient information to admit or deny and therefore deny.  Any suggestion that noncitizen voting must be "widespread" to justify attention or action is denied. The last sentence of paragraph 1 is denied.

2.     Admitted that this case is about the proper interpretation of 52 U.S.C. § 20507(c)(2). Denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such. Section 20507(c)(2) speaks for itself; otherwise, denied.

3.     Denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.  Section 20507(c)(2) speaks for itself.  Denied that § 20507(c)(2) addresses any and all errors that "disenfranchise, confuse, or deter eligible voters[.]" Averred both that § 20507(c) prohibits only some removals within the 90 days before a federal election and that Alabama did not, through the 2024 noncitizen letter

process, administratively remove anyone within the 90 days before a federal election.

4.    Admitted, but averred that the State did not, as a result of the 2024 noncitizen letter process, administratively remove any individuals in advance of the November 2024 General Election and, in fact, all individuals impacted by the process remained registered voters and able to vote in the November 2024 General Election unless disqualified for other reasons or self-removed.

5.    Denied.  Averred that more than 2,000 individuals had either been made Active or were on track to be made Active before the Court entered its preliminary injunction requiring additional individuals—potentially including noncitizens—to be made Active.  Further averred that other individuals requested removal and still others were already in Inactive status when the 2024 noncitizen letter process began. Averred that fewer than 1,000 individuals remained Inactive as of mid-October as a result of the 2024 noncitizen letter process, and each of them, if eligible, could have voted by timely submitting a completed voter registration form, voting absentee, or updating at the polls on Election Day.  Of Alabama's more than 3.8 million registered voters, more than 400,000 other Alabama voters were likewise Inactive.

6.     Admitted that the United States so alleges, but denied that the State has violated § 20507(c)(2) through the implementation of the 2024 noncitizen letter process.  Further denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.

7.     Denied.  Further denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.

8.     Denied.  Further denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.

## "JURISDICTION AND VENUE"

9.     Admitted.

10.     Venue is not contested.

## "PARTIES"

11.     Admitted that the United States brings this civil action for declaratory or injunctive relief pursuant to 52 U.S.C. § 20510(a).  Otherwise, denied.

12.     Admitted that the State of Alabama is a State of the United States.  Admitted that the NVRA applies to Alabama and that Alabama is therefore obligated to comply with Section 8 thereof insofar as it is constitutional.

13.     Admitted.

"FACTUAL ALLEGATIONS"

**"Section 8(c)(2) of the National Voter Registration Act"**

14.    Section 20507 speaks for itself.

15.    Section 20507(c)(2), in its entirety, speaks for itself.  Denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.

16.    Denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.  Admitted that § 20507(c)(2) allows some removals at any time, including systematic removals.  Otherwise, § 20507(c)(2) speaks for itself.

17.    Denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.  Section 20507(c)(2) speaks for itself.

18.    Denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.  Section 20507(c)(2) and *Arcia v. Florida Secretary of State,* 772 F.3d 1335 (11th Cir. 2014), speak for themselves. Averred that *Arcia* is distinguishable. Any implication that *Arcia* was correctly decided is denied.

19.    Denied. Further denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.

**"Secretary Allen's 'Process to Remove Noncitizens Registered to Vote in Alabama'"**

20.    Admitted that on August 13, 2024, Secretary of State Wes Allen announced that he was instructing the Boards of Registrars "to immediately inactivate and initiate steps necessary to remove" "3,251 individuals who are registered to vote

5

in Alabama who have been issued noncitizen identification numbers by the Department of Homeland Security."

21.    Admitted.

22.    Admitted that the Secretary of State's office announced the 2024 noncitizen letter process in a press release issued 84 days before the November 5, 2024 General Election.

23.    Admitted that the Secretary of State's press release acknowledges that "it is possible that some of the individuals who were issued noncitizen identification numbers have, since receiving them, become naturalized citizens and are, therefore, eligible to vote" and that the process "will allow those naturalized citizens to update their information on a State of Alabama Voter Registration Form and, once verified, vote in the state's elections."  Admitted that the press release did not fully explain how the individuals were identified, but denied that such explanation was legally required or has any bearing on whether a violation of § 20507(c)(2) is established.

24.    Admitted that Secretary of State Allen instructed the Boards of Registrars to make the individuals Inactive and send them a letter based on a template he provided, but averred that approximately 450 individuals were already Inactive when the 2024 noncitizen letter process started. Further averred that there were duplicates on the list of 3,251 individuals, and that the list was actually two separate lists.  Further averred that the 2024 noncitizen letter process commenced in August

2024, nearly three months before the 2024 General Election and additional steps were subsequently taken.

25.    Admitted that any of Alabama's more than 400,000 Inactive voters, including those who were impacted by the 2024 noncitizen letter process, would need to timely submit a voter registration form in advance of the election or complete a Voter's Reidentification/Update Form at the polls on Election Day in order to vote, but averred that an individual impacted by the 2024 noncitizen letter process could vote absentee, if he or she qualified to do so, without taking either of those steps due to the 2024 noncitizen letter process.  Averred that there were duplicates on the list of 3,251 individuals, and that the list was actually two separate lists.

26.    Admitted that a portion of the August 13 template letter has been properly quoted.

27.    Admitted that a portion of the August 13 template letter has been properly quoted.

28.    Admitted that a portion of the August 13 template letter has been properly quoted, but any suggestion that the letter, in context and reasonably understood, suggested that citizens who are eligible to vote should self-remove is denied.

29.    Admitted that a portion of the August 13 template letter has been properly quoted.

30.     Admitted that the standard State of Alabama Voter Registration Form, which the Secretary's office instructed should be included with the August template letter, states that voter registration "is closed during the 14 days prior to each election in Alabama."  Denied that the deadline is prominent.  Averred that the form and the deadline are standard, that the deadline is codified in Alabama law (*see* Ala. Code § 17-3-50), and that mid-August was more than two months before the voter registration deadline.

31.     Admitted, but averred that online registration is a pre-existing standard option for anyone who wants to register to vote in Alabama.  Online registration was first made available in Alabama in early 2016, was widely promoted at its adoption, and is prominently promoted now.  Denied that mention of online registration in the August 13 template letter was legally required or has any bearing on whether a violation of § 20507(c)(2) is established.

32.     Admitted, but averred that all Inactive voters have long been able to update their registration in advance of the voter registration deadline by timely submitting a completed voter registration form *or* by completing a Voter's Reidentification/Update Form at the polls on Election Day.  Denied that mention of the option to complete a Voter's Reidentification/Update Form at the polls  in the August 13 template letter was legally required or has any bearing on whether a violation of

§ 20507(c)(2) is established.  Further, any suggestion that the noncitizen letter recipient was required to know about the form in order to ask for it at the polls is denied.

**"The 3,251 Individuals Targeted by the Program"**

33.    Denied to the extent that paragraph 33 alleges that Secretary of State Allen or his office did all of the matching. Averred that there were duplicates on the list of 3,251 individuals, and that the list was actually two separate lists. Admitted that one list was based on matches to data from the Alabama Law Enforcement Agency, the other list was based on matches to data from the Alabama Department of Labor, and all matches were against Alabama's voter registration list.

**"ALEA Driver's License Records"**

34.    Admitted.

35.    Admitted, but averred that they may be valid for less than four years.

36.    Admitted, but averred that they may be valid for less than eight years.

37.    Admitted.

38.    Admitted.

39.    Denied.

40.    Admitted that the criteria listed in paragraph 40 were part of the initial round of matches.  Otherwise, denied.

41.    Admitted.

42.    Admitted that the ALEA component of the process did not exclude individuals who became naturalized citizens after obtaining a foreign national driver's license or non-driver ID card, but denied that this means the process "failed to account" for these individuals. Averred that the Secretary of State accommodated these individuals by instructing that noncitizen letter recipients be made Inactive rather than removed from the voter rolls, by instructing that a voter registration form be included with the noncitizen letter, by subsequently instructing that noncitizen letter recipients be informed about online voter registration and the ability to update at the polls or vote absentee, and by making updating voter registration in Alabama very easy.

***"ADOL Unemployment Records"***

43.    Admitted.

44.    Admitted.

45.    Admitted.

46.    Admitted.

47.    Admitted, except that if newly naturalized U.S. citizen sought unemployment benefits through an initial claim or an additional reopen claim after having previously applied for benefits, he or she would be again asked about citizenship status.

48.    Denied.

49.    Admitted.

50.    Admitted that this has proven to be true for a handful of voters.  As to whether such a scenario played out with respect more than a handful of voters, the State Defendants lack sufficient information to admit or deny and, therefore, deny. Denied that the Secretary of State's office had any knowledge this would be the case when the office initiated the 2024 noncitizen letter process.

51.    Admitted that the Alabama Department of Labor component of the process did not exclude individuals who became naturalized citizens after representing to ADOL that they were not U.S. citizens, but denied that this means the process "failed to account" for these individuals. Averred that the Secretary of State accommodated these individuals by instructing that noncitizen letter recipients be made Inactive rather than removed from the voter rolls, by instructing that a voter registration form be included with the noncitizen letter, by subsequently instructing that noncitizen letter recipients be informed about online voter registration and the ability to update at the polls or vote absentee, and by making updating voter registration in Alabama very easy.

**"Alabama Agency Databases"**

52.    As to the first sentence, the State Defendants lack sufficient information to admit or deny and therefore deny; they further aver that Secretary of State Allen repeatedly asked the United States for help in determining who on Alabama's voter

registration list was an ineligible noncitizen.  As to the second sentence, admitted that the Special Report exists, but any suggestion that the Secretary of State's office knew about the Special Report before initiating the noncitizen letter process is denied.

53.     As to the first sentence, the State Defendants lack sufficient information to admit or deny and, therefore, deny.  As to the second sentence, admitted that the cited press release says that the ALEA database includes historic data, but denied that this means ALEA's data is obsolete.

**"Impact of the Program"**

54.     Admitted that U.S. citizens were among those who received noncitizen letters as part of the process. Averred that there were duplicates among the 3,251 individuals.  Otherwise, denied.

55.     Admitted that, as of September 19, 2024, a total of 717 individuals who had received noncitizen letters as part of the 2024 noncitizen letter process had been made Active.  Averred that more than 2,000 individuals had either been made Active or were on track to be made Active before the Court entered its preliminary injunction requiring additional individuals—potentially including noncitizens—to be made Active.  Averred that there were duplicates among the 3,251 individuals.  Otherwise, denied.

56.    Admitted that the voter registration form and the Voter's Reidentification/Update Form require, among other things, an individual to swear that he or she is a U.S. citizen. Any suggestion that documentary proof of citizenship is being required as a matter of State policy is denied.

57.    Admitted that the noncitizen letter recipients made Active, or on track to be made Active, before the Court entered its preliminary injunction have either been confirmed to be U.S. citizens or have affirmed that they are. Otherwise, denied.

58.    Admitted that, by letter dated September 19, 2024, the Secretary of State's office informed the U.S. Department of Justice that the "data further shows that at least 106 individuals have self-removed," and that, as set out in paragraph 3 of the Second Declaration of Clay Helms, that number had risen to 159 by October 8, 2024, but averred that a search for the actual removal forms conducted no later than October 1, 2024 turned up 91 forms, as explained in the (original) Declaration of Clay Helms in paragraphs 56 and 57.  Otherwise, denied.

59.    Admitted, but averred that, while it was not required, some individuals did write on their Voter Removal Request forms that they were not U.S. citizens.

60.    Admitted, and averred that, while it was not required, some individuals did write on their Voter Removal Request forms that they were not U.S. citizens.

61.    Admitted that the Secretary of State's office was notified of at least two instances of this happening and provided curative instructions.

62.    Admitted that the Secretary of State's curative instructions were limited to those Registrars known to have erred.

63.    Admitted that natural-born citizens identified themselves to the Alabama Department of Labor as noncitizens and also registered to vote in Alabama with the result being that some natural-born citizens were included in the 2024 noncitizen letter process.

64.    To the extent that this allegation considers the relevant records outdated if, while current, someone who represented to ALEA or the Alabama Department of Labor that he or she is a noncitizen was in fact a U.S. citizen or has since become a U.S. citizen, admitted.  Otherwise, the State Defendants lack sufficient information admit or deny and, therefore, deny.

65.    Denied.

66.    Admitted that two declarants assert this, but "some" is vague and undefined and, as to whether such a scenario played out with respect more than a handful of voters, the State Defendants lack sufficient information to admit or deny and, therefore, deny.  Averred that, insofar as the match to the Alabama Department of Labor is concerned, the Secretary of State's office is not interested in whether a voter has applied for, or received, unemployment benefits, only whether a voter is eligible.

67.    Admitted that a declarant asserts this, but "some" is vague and undefined, and, as to whether such a scenario played out with respect more than a handful

of voters, the State Defendants lack sufficient information to admit or deny and, therefore, deny.  Averred that the Secretary of State's office did not know about the issues with Labor's data when the office initiated the 2024 noncitizen letter process.

68.    "Some" is vague and undefined.  As to whether such a scenario played out with respect more than a handful of voters, the State Defendants lack sufficient information to admit or deny and, therefore, deny.

69.    The State Defendants lack sufficient information to admit or deny and, therefore, deny.

70.    Admitted that the Secretary of State's office responded to some individuals seeking information regarding the 2024 noncitizen letter process that the Department of Homeland Security issues noncitizen numbers and that a noncitizen number is associated with the individual's State records, but otherwise denied.

71.    Denied.

72.    Admitted that declarants assert this, but "some" is vague and undefined and, as to whether such a scenario played out with respect more than a handful of voters, the State Defendants lack sufficient information to admit or deny and, therefore, deny.

73.    Denied.

**"Secretary Allen's September Form Letter to Targeted Voters"**

74.     Admitted that, on September 18, 2024, the Secretary of State's office emailed the Boards of Registrars instructing them to send a new template letter to 2,428 individuals, and that the email said those 2,428 individuals "are inactive and have yet to update their registration or remove themselves from the voter list." Otherwise, denied.

75.     Admitted.

76.     Admitted that the September 18 template letter said: "If you need to vote absentee, you are encouraged to first update your information with your local Board of Registrars as described above.  Regardless, you will be allowed to vote absentee pursuant to the normal process."  Denied that the letter suggested that updating could only be done through the online registration process.

77.     Admitted that a portion of the September 18 template letter has been properly quoted.

78.     Denied.

79.     Admitted.

**"CAUSE OF ACTION"**

80.     The State Defendants incorporate by reference their responses set forth above.

81.     Denied.

82.     Denied that the State Defendants violated § 20507(c)(2). Denied that § 20507(c)(2) is a Quiet Period Provision or should be referred to as such.

83.     Denied that the State Defendants violated § 20507(c)(2).

### "PRAYER FOR RELIEF"

Denied that the United States is entitled to relief.

### DEFENSES

1.     Any allegation not expressly admitted above is denied.

2.     Alabama has the authority and responsibility to set and enforce voter registration requirements for federal, State, county, and local elections occurring within its boundaries. Alabama lawfully excludes noncitizens from the electorate.

3.     Noncitizen voting, when it happens, inflicts a special harm on our democracy, which is different in kind from a voter who moved and did not update his or her voter registration information.

4.     The United States has failed to state a claim.

5.     The text and structure of § 20507 mean that, if the 90-day bar in § 20507(c)(2) applies to removals of noncitizens, then so does the general removal provision in § 20507(a)(3). Such a reading is both absurd and unconstitutional.

6.     Section 20507(c)(2) does not impose a quiet period. The clear text allows for even systematic removals of persons ineligible to vote due to criminal conviction, mental incompetence, and/or death.

7.    Section 20507(c)(2) cannot mean that every program the end result of which is to remove voters must reach its end before a federal election.  Section 20507 itself requires a four-year program which is routinely on-going during the 90 days before (and even on the day of) federal elections.  52 U.S.C. § 20507(a)(4), (b) & (d).  The United States' reading, therefore, makes the statute inconsistent.  Contrary to the United States' argument, the safe harbor provision, 52 U.S.C. § 20507(c)(1), does not prove otherwise and is not an exception to the four-year program requirement.

8.    Section 20507(c)(2) does not say that a State may not *start* a voter removal program in the 90 days before a federal election; it says a State may not *complete* one.  To complete a voter removal program is to remove voters.  The 2024 noncitizen letter process was started, not completed, in the 90 days before the federal election.

9.    That Alabama has historically been "quiet" with respect to voter removal programs during the 90 days before a federal election does not mean that this practice is required under a proper interpretation of § 20507(c)(2) and it does not mean that any program is *completed*.

10.    Legislative history does not override the text and structure of the statute.

11.     To the extent that the United States argues that the State may, during the 90 days before a federal election, remove the deceased, those with criminal convictions, and those declared mentally incompetent, but may not communicate with those individuals about that removal, that interpretation is absurd.

12.     *Arcia v. Florida Secretary of State,* 772 F.3d 1335 (11th Cir. 2014), was wrongly decided. All defenses rejected by the *Arcia* court are preserved for appeal.

13.     Section 20507(c)(2) does not consider or address noncitizens.

14.     Section 20507(c)(2) does not prevent the States from removing noncitizens from their voter registration lists at any time.

15.     Reading § 20507(c)(2) to prohibit States from removing noncitizens from the voter registration list at any time renders the statute absurd.

16.     If § 20507(c)(2) prohibits States from removing noncitizens from their voter registration lists at any time, it is unconstitutional.

17.     Section 20507(c)(2) is about removing voters in the 90 days before an election; it does not concern any action short of removal, and specifically does not concern making voters Inactive.

18.     *Arcia v. Florida Secretary of State,* 772 F.3d 1335 (11th Cir. 2014), is about removing voters in the 90 days before an election; it does not concern any action short of removal, like making voters Inactive, and is therefore distinguishable.

19.     Changing the status of a voter to Inactive is always allowed during the 90 days before a federal election—and even contemplated by § 20507.

20.     Reading § 20507(c)(2) to prohibit States, at any time, from taking any action short of removal as to noncitizens on the voter registration rolls, renders the statute absurd.

21.     If § 20507(c)(2) prohibits States, at any time, from taking any action short of removal as to noncitizens on the voter registration rolls, it is unconstitutional.

22.     Reading § 20507(c)(2) to prohibit Alabama from undertaking, at any time, the 2024 noncitizen letter process, renders the statute absurd.

23.     If § 20507(c)(2) prohibits Alabama from the undertaking, at any time, the 2024 noncitizen letter process, it is unconstitutional.

24.     The 2024 noncitizen letter process is lawful as a "correction of registration records" which is exempted from the 90-day bar.

25.     The 2024 noncitizen letter process was not systematic.

26.     The referral to the Attorney General is irrelevant to a determination of whether the 90-day bar has been violated.

27.     If considered, the Secretary did update the Attorney General on his activities, *see* Exhibit 1 (September 18, 2024 letter from Secretary of State Allen to

Attorney General Marshall, without enclosures); U.S. doc. 24-3 at 2 (email referencing the September 18, 2024 letter), and never asked the Attorney General to prosecute citizens for lawfully voting.

        *Respectfully Submitted,*

        Steve Marshall
          *Attorney General*

        <u>/s/ Misty S. Fairbanks Messick</u>
        James W. Davis (ASB-4063-I58J)
        Robert M. Overing (ASB-8736-M14Q)
          *Deputy Attorneys General*
        Misty S. Fairbanks Messick (ASB-1813-T71F)
        Scott Woodard (ASB-1001-F94C)
          *Assistant Attorneys General*
        OFFICE OF THE ATTORNEY GENERAL
        STATE OF ALABAMA
        501 Washington Avenue
        P.O. Box 300152
        Montgomery, Alabama 36130-0152
        Telephone: (334) 242-7300
        Fax: (334) 3538400
        Jim.Davis@AlabamaAG.gov
        Robert.Overing@AlabamaAG.gov
        Misty.Messick@AlabamaAG.gov
        Scott.Woodard@AlabamaAG.gov

        **Counsel for the State Defendants**